Thurman, C. J.
The questions presented by this record have been very fully and ably argued by counsel, in order that they might be decided upon this application, the applicants not wishing leave to file their petition unless the court, upon mature consideration, should be of opinion that the judgment complained of ought to be reversed. It is not our practice to hear fully, upon a mere motion to file a petition in error, since we do not require to be convinced that a judgment is erroneous before granting such .leave. It is sufficient that we doubt its correctness, or that the question is one which, though not difficult, is yet of such general importance, that it ought to be decided by the court of the last resort, and reported. But where, as in this instance, the questions are of unusual gravity, and their decision at an early day is highly desirable, we do not hesitate to depart from our usual practice, and consider them as fully, upon a mere motion for leave to file a petition, as we would upon the petition if filed.
*It was not pretended in the court below, nor is it now that the of the statute in respect to the-lay *176 ing out of roads, were not complied with in this case. But the objection made, is, that when these proceedings took place, there was no law providing for such a jury to assess Lane’s damages, as he had a right under the constitution to demand, and that, consequently, the attempt to appropriate his land was unconstitutional.
That private property shall not be taken for public use without compensation in money being made to the owner, and that “ such compensation shall be assessed by a jury,” are express provisions of the constitution (art. 1, sec. 19); and that no valid appropriation can be made without a law providing such compensation, is a fundamental principle often asserted, and nowhere more strongly than in this state. “Before the owner can, without his consent, be deprived of his land, for the public use, the legislature must declare by law that the public welfare requires it, direct the mode of ascertaining its value, and provide for its payment,” was the language of the court, in McArthur v. Kelley, 5 Ohio, 143. “ Unless the law, by which the defendant’s property is taken for a public use, provides him a compensation, it is void,” said Chief Justice Lane, delivering the judgment of the court, in Foote v. Cincinnati, 11 Ohio, 410.
That where the constitution prescribes the mode of assessment, that mode must be pursued; and that the constitution, in the particular case under consideration, does not execute itself, but that provision must be made by law for the selection, etc., of a jury, are propositions sufficiently obvious and not denied.
This brings us to the questions involved in this case, to wit:
1. Does the provision in article 1, section 19, of the constitution, for an assessment of compensation by a jury, apply where property is taken to make or repair roads, which are to be open to the public without charge ?
2. Does the term “jury,” in that section, mean a jury of twelve?
*3V If it does, had the law provided such a jury when Lane’s land was taken ?
4. Did he waive his right to an assessment by such a jury ?
The constitutional provision is in these words:
“Art. 1, sec. 19. Private property shall ever be held inviolate, but subservient to the public welfare. “When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner in money; and in all other cases, where private *177 erty shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall bo assessed by a jury, without deduction for the benefits to any property of the owner.”
In Stemble v. Hewling & Hancock, 2 Ohio St. 228, it was very elaborately argued, that this provision for a jury relates only to cases falling under the latter clause of the section, and that consequently in the cases specified in the first clause, of property taken for purposes of war or for public roads, a jury assessment is not necessary. In respect to these, it was said that the constitution is not different from that of 1802, under which it was uniformly held that the damages might be assessed by a commission. Willyard v. Hamilton, 7 Ohio (pt. 2), 111.
For reasons stated in the judgment delivered, we then expressed no opinion upon this question; but we have now considered it, with the aid of the arguments referred to, and are unanimously and clearly of the opinion, that both the jury provision and that forbidding a deduction of benefits, do apply to all the cases named in the section. There is nothing in the grammatical construction of the section, nor anything in reason or justice, that requires a more limited application; and it is certainly forbidden by a consideration of the old law, and the *evil which it is fair to presume the constitution was intended to remedy. In regard to this last consideration, see the remarks of Judge Ranney, in Work’s case, 2 Ohio St. 307.
That the term “jury,” without addition or prefix, imports a body of twelve men in a court of justice, is as well settled as any legal proposition can be. Work’s Case, and Willyard v. Hamilton, supra. That it is used in this sense wherever it occurs in the constitution, except in the section under consideration, is admitted by counsel, and could not be successfully denied. Unless, then, we are prepared to assert, that the same word means one thing in one part of the constitution, and another thing in other parts of it; that in some places it has a definite legal signification, but that in another it defines nothing with certainty, we must give to it, wherever it occurs, its ordinary common-law import. Now, is it reasonable to suppose that the framers of the constitution used the word in an indefinite and doubtful sense, and that, while carefully protecting the right of property, by adding to the pre-existing safe-guards the additional one of a jury trial, they left it to the legislature to con *178 stitute the jury of.any number, however small? For, if it may consist of six, as prescribed in the statute before us, for the same reason it may consist of three, or two, or even one, if the assembly see fit to declare so. And, as was well observed in Work’s case, “ it is no answer to say, that this would not likely be done. ' If it had heen deemed safe to leave it to the discretion of the general assembly, no constitutional provision was needed; but whether needed or not, it has been ordained by a power, which both the general assembly and this court are bound to obey.”
.Nor can it be said that the constitution means to give a jury of twelve only where the common law gives it; for where a right of way is appropriated for the use of a corporation, it is expressly declared (art. 13, sec. 5), that the compensation to the owner shall be ascertained by a jury of twelve men, in a court of record. The spirit of the constitution is thus manifest, *for there is no reason why a jury of twelve, in a court of record, should be the proper tribunal when property is taken for a corporation, and some inferior tribunal be deemed sufficient when it is taken in the name of the state. It is only by an exercise of her right of eminent domain that it can he taken at all; and a corporation, when appropriating it, is nothing more, in principle, than her agent or instrument. 1 Ohio St. 95. However taken, it must be for a public use; for no corporation can take it for a mere private use unconnected with any public purpose. Ib.
And here I may observe, that the constitutional provision last cited, affords an answer to the argument ab inconveniente that has been urged upon us; for there is no more difficulty in assessing the damages 'by a jury of twelve, in a court of justice, when property is taken for the state, than there is when it is taken for a corporation.
It also furnishes an answer to what has been said of the use of the word “jury” in divers statutes, to designate bodies of men composed of a less number than twelve; as justices’ juries, sheriffs’ and coroners’, and apprentices’, etc.; for, by requiring twelve men sitting in a court of record, it shows that no smaller tribunal was contemplated for cases of condemnation. And in this connection it may be well to remark, that the act of March 25,1851 (2 Curwen, 1672), which provided a jury of six to assess damages in road was not enacted until after the constitution was framed and *179 the convention had adjourned. Of course, it throws no light upon the purpose of the convention.
It is true that the counsel for the applicants draws a very different inference from article 13, section 5, and argues that the specification of the number twelve in this section, affords an implication that that number is not required by section 19 of article 1, in which the number is not expressly stated. “JSxpressio unius est exclusio alterius,” is the argument.
But in addition to what has already been said militating ^against this view, it is to be borne in mind that the above maxim is by no means of indiscriminate application, and that it would be especially dangerous to rely very strongly upon it in construing the constitution, the different articles of which were drafted by different committees, who, however they might concur in a common purpose, would not be very likely to employ precisely the same language to accomplish it. The committee that drafted the bill of rights (art. 1) saw no necessity to define the word “ jury,” for they apprehended no disregard of the ordinary legal signification of the term: the committee that prepared the article on corporations were apparently less confident, or were of a more cautious temper, and they did define it.
It was in view of these and the other considerations that bear upon the question, that this court arrived at the conclusion, in Work’s case, to which we still adhere, that “if any inference is to be drawn from specifying the number of the jury [in art. 13], it is very strong evidence of the sense of the convention, that that was what had already been secured by the other sections, to suitors in other cases.” 2 Ohio St. 307, 308.
And we agree with Grimke, J., in Willyard v. Hamilton, that a jury, properly speaking, is an appendage ■ of a court, a tribunal auxiliary to the administration of justice in a court, that a presiding law tribunal is implied, and that the conjunction of the two is the peculiar and valuable feature of the jury trial; and, as a necessary inference, that a mere commission, though composed of twelve men, can never be properly regarded as a jury.
Upon the whole, after a careful examination of the subject, we are clearly of the opinion, that the word “jury,” in section 19 of article 1, as well as in the other places in the constitution where it occurs, means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence, and arguments of the parties. *180, 181 It is hardly necessary to add, that they may be sent to inspect tho premises. That may be done in the trial of even a common-law action, when it is expedient. It is done, ♦under the act regulating the appropriation of property by corporations; an act, I may remark, in passing, that shows how easy it is to comply with the requirements of the constitution upon the subject we are considering.
Before leaving this part of the case, I would observe, to prevent misapprehension, that we entertain no doubt of the validity of an enactment that requires an assessment of the damages, in the first instance, by a commission — as, for example, the viewers of a road —provided a right of appeal is given to a court in which they may be assessed by a constitutional jury. For the same reason that a cause m'ay be tried by a justice of the peace, without a violation of the constitutional provision securing the right of trial by jury, provided such trial by jury can be obtained by an appeal, there may be an assessment by the viewers of a road or other commission, if an appeal and proper jury trial be allowed.
The next inquiry is, whether, when Lane’s property was taken, there was any law providing a proper jury to assess his damages. And we are clearly of the opinion there was not. The statute required them to be assessed, in the first instance, by the viewers, which was well enough. From their decision, when confirmed by the county commissioners, an appeal was given to the probate court in respect to the damages, and to the court of common pleas in respect to the order establishing the road. With the policy of thus dividing the proceeding into two parts, and sending one part to one forum, and the other to another, we have nothing to do. It is sufficient that each court was competent to receive the jurisdiction conferred upon it; but the fatal difficulty is, that a jury of six was prescribed for the case in the probate court; and as to the common pleas, no jurisdiction over the question of damages was given to it.
It is argued, indeed, that the common pleas, after the reversal of the order of the county commissioners, might have set the matter down for further proceedings in that court, and caused an ♦assessment by a jury of twelve to be made. But the statute gave no such authority, and to have done so, would have been to usurp a jurisdiction not conferred, by supplying an omission in legislation.
The last point made is, that Lane waived his right to a jury trial.
We see no waiver in the case. For my own part, I do not *182 perceive how a man can be said to waive a thing which he can not have, let him demand it ever so stoutly. Had Lane required an assessment by a jury of twelve, his demand would have been fruitless, for there was no law to impanel such a jury. How, then, can he be said to have waived it? But, apart from this consideration, what evidence of waiver is there ? It is answered, that he did not appeal to the common law, from the order establishing the road, and he did appeal to the probate court, in respect to the damages.
This is all very true, but what does it amount to ? Simply to this, that he sought to get the damages to which he thought himself entitled, and, failing, refused to accept the amount assessed. Had he accepted that amount, there would be room to talk about a waiver. As it is, there is none. He was no volunteer, coming into court without being called, and selecting his own forum. On the contrary, he was on the defensive all the time. The public were trying to take his land, and he was resisting the attempt until he should be paid to his satisfaction, or the amount of his damages be ascertained in a constitutional mode.
It follows, from these views, that there is no error in the action of the common pleas, and leave to file a petition in error is therefore refused.